# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| TIFFANY SHIBHON VANSCIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: _____ |
| | ) | |
| TOWN OF COOPERTOWN, TENNESSEE, | ) | JURY DEMAND (12) |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT FOR DAMAGES

Plaintiff, TIFFANY SHIBHON VANSCIVER (hereinafter "Plaintiff"), by and through the undersigned counsel, and hereby files this Verified Complaint for Damages for claims of disparate treatment; sexual harassment; and retaliation in contravention of 42 U.S.C. § 2000e-2, et seq., and the Tennessee Human Rights Act against Defendant, TOWN OF COOPERTOWN, TENNESSEE (hereinafter "Defendant"). In support thereof, Plaintiff would show unto the Court as follows:

## I.   PARTIES

1. Plaintiff, at all times relevant to this Complaint, has been an adult citizen and resident of Robertson County, Tennessee.

2. Defendant, Town of Coopertown, Tennessee, is a governmental entity in the State of Tennessee with its principal place of business located at 2525 Burgess Gower Road, Springfield, Tennessee 37172.

## II.   JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution, laws, or treaties of the United States.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims in this action, pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims are so related to her federal law claims in this action such that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, as Defendant is a state or local government entity located within this judicial district and Defendant is subject to the personal jurisdiction of this judicial district.

6. Venue is also proper in this judicial district, pursuant to 28 U.S.C. § 1391, as all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

### III. STATEMENT OF FACTS

7. Plaintiff would show that on or about January 14, 2023, she became an employee of the Town of Coopertown, Tennessee, in the capacity of a law enforcement officer for the Coopertown Police Department ("CPD").

8. Plaintiff was employed as a police officer by CPD, and her chain of command included Sergeant Justin Parker ("Sgt. Parker"), Lieutenant Levert Jackson ("Lt. Jackson"), and Chief Tyler Haley ("Chief Haley"). Plaintiff's chain of command also included the mayor of Coopertown, Tennessee.

9. Plaintiff would show that shortly after beginning her employment with CPD, she was subjected to a pattern of severe and pervasive sexual harassment such that it created a hostile work environment.

10. Plaintiff would show that on numerous occasions, her superior officers at CPD repeatedly made inappropriate comments directed at and disparaging to women. By way of example, on one occasion Plaintiff heard Sgt. Parker make the remark that "Women wear aprons and make sandwiches."

11. Plaintiff would show that in January 2023, Lt. Jackson pulled Plaintiff aside to ask her a question while the two of them were alone in Lt. Jackson's squad car. Lt. Jackson asked Plaintiff directly whether she had feelings for him and whether she found him physically attractive. Plaintiff categorically denied having feelings for or being attracted to Lt. Jackson, and Plaintiff felt deeply uncomfortable regarding this exchange.

12. Despite Plaintiff's unambiguous denial of any kind of emotional or physical attraction to Lt. Jackson, Lt. Jackson repeatedly pressured Plaintiff with this same inquiry and continued to make inappropriate comments to Plaintiff which contained insinuations of a sexual and inappropriate nature.

13. By way of example, Lt. Jackson repeatedly sent Plaintiff numerous strange messages via text message while he was on vacation with his family. By way of another example, on one occasion Lt. Jackson viewed a social media post by Plaintiff which she had posted to Instagram. The post was of Plaintiff in the gym and she was wearing tight workout clothes, including a pair of yellow shorts. After viewing said post, Lt. Jackson remarked directly to Plaintiff that "Yellow is my new favorite color," in an apparent inappropriate sexual innuendo.

14. Plaintiff was also subjected to harassment by Chief Haley, the chief of CPD. Chief Haley repeatedly made inappropriate comments to Plaintiff, asking if she had any single friends that she could introduce him to.

15. Plaintiff would show that often, while at the CPD office, Chief Haley would wander around the office space while loudly proclaiming "I got a big dick," for other employees and subordinates to hear. Chief Haley repeatedly made this remark, or variations of it, on numerous occasions, often times as though he was singing it to the entire office.

16. Chief Haley repeatedly told Plaintiff that he wished to come see her outside of working hours and frequently requested that she spend time with him outside of work. These messages were sent via text, over phone calls, and over Snapchat messages.

17. On one occasion, prior to beginning her employment at CPD, Chief Haley sent Plaintiff an unsolicited and explicit Snapchat picture message of his genitals. This Snapchat picture message appeared to have been taken while Chief Haley was in his office at the Coopertown City Hall building. Plaintiff interpreted this instance as a one-off and assumed that, after rejecting this advance, Chief Haley would cease his inappropriate courtship of her once she began employment at CPD. Plaintiff later discovered that this assumption was, unfortunately, incorrect.

18. Aside from the specific statements listed above, Plaintiff, while working for CPD, was subject to severe and pervasive sexual harassment and discrimination. It would not be uncommon for Plaintiff and her female co-workers to be subject to remarks to the effect that women should be concerned with domestic work rather than police work.

19. CPD's discrimination and unfair treatment of Plaintiff reached a climax in the month of April 2023, after Plaintiff became injured while lifting heavy furniture at work. Toward the

end of March 2023, Plaintiff was moving furniture at work when she experienced a sharp pain in her neck and numbness down her right arm.

20. Plaintiff promptly sought the advice of a medical doctor, and a magnetic resonance imaging scan ("MRI") was scheduled for April 28, 2023. Plaintiff then informed her superiors, Sgt. Parker and Chief Haley, that the earliest she could get an MRI was April 28, 2023, and that she would also have a follow-up appointment with a neurologist thereafter.

21. The day after being informed of Plaintiff's injury and her April 28, 2023, MRI appointment, Chief Haley proceeded to schedule required firearms training for the very same day. Upon information and belief, Chief Haley intentionally scheduled the firearms training on a date and time that Plaintiff would be unable to attend.

22. Shortly following Chief Haley's scheduling of firearms training for April 28, 2023, Sgt Parker requested that Plaintiff schedule her MRI for another day. Plaintiff attempted to reschedule her MRI, however, there were no dates available.

23. Because Plaintiff would not be able to attend the firearms training scheduled for April 28, 2023, Chief Haley sent Plaintiff an email informing Plaintiff that she was being removed from Special Weapons and Tactics ("SWAT") school. Upon information and belief, Chief Haley's decision to remove Plaintiff from SWAT team consideration arose from Plaintiff's sex and/or gender and refusal of her superior's sexual advances, rather than any legitimate, nondiscriminatory reasoning. Plaintiff believes that any claim that her removal from SWAT team consideration was based on her workplace injury, or other reasons, would be pretextual.

24. On or about April 14, 2023, Plaintiff was once again moving heavy equipment when she felt a snap and sharp pain in her neck and shoulder region. This incident greatly exacerbated

the pain that Plaintiff was already suffering as a result of the above-mentioned March 2023 neck injury.

25. On Plaintiff's way to notify her supervisors of her new injury, Plaintiff received a call requesting her to go speak with Sgt. Parker. When Plaintiff arrived at Sgt. Parker's office, Plaintiff soon realized that she was receiving a disciplinary write-up.

26. Plaintiff received the above-mentioned write-up on April 14, 2023. Upon information and belief, Plaintiff's April 14, 2023, write up arose from Plaintiff allegedly failing to turn on her body camera as required by CPD policy.

27. Plaintiff respectfully declined to sign the April 14, 2023, write-up because, at the time of the incident referenced in the write-up, Plaintiff was not engaged in a situation where CPD policy required the use of a body camera. Following Plaintiff's refusal to sign the erroneous write-up, Plaintiff was asked to go home for the remainder of her shift.

28. Upon information and belief, Plaintiff's April 14, 2023, write-up was merely a thinly-veiled attempt to single-out, harass, and retaliate against Plaintiff rather than any legitimate, nondiscriminatory punishment of Plaintiff for violating CPD policy.

29. Several days following Plaintiff's April 14, 2023, write-up, Plaintiff received a text message from Lt. Jackson informing Plaintiff that she could not return to work without a doctor's note and approval. The day following Lt. Jackson's text to Plaintiff informing her that she could not work without medical clearance, Lt. Jackson again text messaged Plaintiff demanding that Plaintiff come to work to assist with an event that CPD was hosting.

30. Plaintiff then informed Lt. Jackson that she was in a great deal of pain and would be unable to provide a great deal of assistance. In disregard of Plaintiff's injury and pain, Lt. Jackson

required Plaintiff to assist with the CPD event but assured Plaintiff that she would only need to drive during the event.

31. When Plaintiff arrived at the CPD event, Plaintiff sat in her CPD vehicle until she was approached by Chief Haley. Chief Haley directed Plaintiff to assist Sgt. Parker with loading equipment into a trailer. Upon information and belief, Chief Haley issued this command knowing that Plaintiff was suffering from a neck and should injury and was unable to lift heavy objects.

32. Following the above-mentioned CPD event, Plaintiff was informed by Lt. Jackson that she needed to have a meeting with him and an employee of CPD's human resources department.

33. On April 24, 2023, Plaintiff met with Lt. Jackson and Kathy Thompson, an employee of CPD Human Resources. At this meeting, Plaintiff was informed by Lt. Jackson that she would be required to complete mental health therapy and remedial training as a consequence of not complying with the CPD chain-of-command.

34. Lt. Jackson then commanded Plaintiff to sign a second disciplinary write-up which alleged that Plaintiff had violated CPD policy by being unprofessional. Specifically, the April 24, 2023, write-up alleges that Plaintiff sent a text message to Sgt. Parker that was perceived as "disrespectful" by Sgt. Parker. Lt. Jackson further informed Plaintiff that she would be required to partake in mental health therapy because Plaintiff had previously told Sgt. Parker that she was stressed. A true and complete copy of the April 24, 2023, disciplinary write-up has been attached hereto as **Exhibit A**.

35. After being informed that she was receiving her second unwarranted write-up in less than two (2) weeks, Plaintiff informed Lt. Jackson that she felt she was being unfairly treated

and singled out. Rather than addressing Plaintiff's concerns of unfair treatment and discrimination, Lt. Jackson told Plaintiff that it was a "direct order" from Chief Haley that Plaintiff sign this write-up and attend mental health counseling as well as remedial training. Lt. Jackson further informed Plaintiff that she would be terminated if she did not sign and comply with the conditions of the April 24, 2023, write-up. Lt. Jackson also told Plaintiff that she would need to return to work the following day, in full uniform, regardless of her injuries.

36. Plaintiff then informed Lt. Jackson that she would not be able to return to work the following day because Plaintiff's injuries temporarily prohibited her from engaging in police work. Though Plaintiff had been placed on restrictions by her doctor until she could receive an MRI and complete diagnosis, Lt. Jackson nonetheless demanded that Plaintiff arrive at work in full uniform the next day. Lt. Jackson further stated that Plaintiff's medical limitation did not matter because she did not have a doctor's note with her during the April 24, 2023, disciplinary meeting.

37. Upon information and belief, Plaintiff's second disciplinary write-up arose from Plaintiff's refusal of sexual advances by her supervisors and gender rather than Plaintiff's "unprofessionalism" or any other legitimate, nondiscriminatory rationale.

38. Following Plaintiff's second unwarranted disciplinary write-up, Plaintiff could no longer handle working for the CPD. The sexual harassment, discrimination, demeaning comments, and unwarranted disciplinary actions had created a hostile working environment that Plaintiff could no longer withstand.

39. Ultimately, Plaintiff told Lt. Jackson that she would not be coerced into signing the April 24, 2023, disciplinary write-up. On or about April 24, 2023, Plaintiff resigned in lieu of

being terminated for refusing to sign the disciplinary write-up and attend the unnecessary mental health counseling.

40. Plaintiff was then seen by her neurologist on April 28, 2023, and it was determined that Plaintiff would undergo cervical spine surgery to repair the injuries that Plaintiff sustained in March and April of 2023 while working for CPD. Plaintiff's neurologist further recommended that plaintiff should refrain from lifting any object weighing more than fifteen (15) pounds until she is able to recover from her spinal surgery. A true and complete copy of Plaintiff's physician order for cervical spine surgery and lifting restriction has been attached hereto as **Exhibit B**.

41. Plaintiff would show that she has not engaged in conduct that would be deserving of a formal disciplinary write-up from her supervisors at CPD. Moreover, Plaintiff was subjected to substantially worse treatment than the treatment her male co-workers received for the same or similar conduct.

42. Upon information and belief, Plaintiff's supervisors engaged in a pattern of discrimination and retaliation designed to make Plaintiff's working environment objectively abusive in response to Plaintiff's rejection Chief Haley, Lt. Jackson, and Sgt. Parker's repeated sexual advances and sexual harassment.

43. Upon information and belief, several other female CPD officers were subjected to similar discrimination, harassment, and/or retaliation while working for CPD.

44. On or about September 7, 2023, Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter, "EEOC") alleging sexual harassment; discrimination; and retaliation. A true and complete copy of Plaintiff's EEOC Charge of Discrimination has been attached hereto as **Exhibit C**.

45. Plaintiff received her Right to Sue letter on September 15, 2023, from the EEOC. Plaintiff's EEOC Notice of Right to Sue letter allows plaintiff ninety (90) days to bring action against Defendant in a court of competent jurisdiction. A true and complete copy of Plaintiff's EEOC Notice of Right to Sue Letter has been attached hereto as **Exhibit D**.

46. Plaintiff has suffered damages because of Defendant's wrongful discrimination, harassment, and retaliation against Plaintiff.

### IV.        CAUSES OF ACTION

**COUNT I: VIOLATION OF TITLE VII, 42 U.S.C. § 2000e *et seq.* – DISPARATE TREATMENT - SEX BASED DISCRIMINATION AND CONSTRUCTIVE DISCHARGE**

47. Plaintiff fully incorporates and re-alleges each of the preceding paragraphs 1 through 46 as if each is fully set forth herein.

48. Plaintiff would show that, as a female, Plaintiff is a member of a protected class for the purposes of Title VII of the Civil Rights Act of 1964 (hereinafter, "Title VII").

49. As an experienced officer of justice, Plaintiff was qualified for her employment within CPD.

50. Plaintiff has experienced adverse employment action in the form of two (2) erroneous and unwarranted disciplinary writeups.

51. Moreover, through sexual harassment; discriminatory conduct; and unwarranted disciplinary actions, Defendant deliberately and/or recklessly created intolerable working conditions for Plaintiff as would be perceived by a reasonable person.

52. The severe and pervasive harassment and discrimination that Plaintiff was subject to while under Defendant's employ was sufficiently severe and pervasive so as to alter the conditions of Plaintiff's employment.

53. Upon information and belief, Defendant, through the conduct of its agents and employees, made Plaintiff's working conditions intolerable with the intent of forcing Plaintiff to resign. Accordingly, Plaintiff has also experienced an adverse employment action by way of constructive discharge.

54. Lastly, upon information and belief, Plaintiff has been treated differently than her male cohorts for the same or similar conduct upon which Plaintiff was disciplined with formal write-ups.

55. Plaintiff has suffered damages as a result of Defendant's sex-based discrimination and eventual constructive discharge of Plaintiff.

**Count II – VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT, T.C.A. § 4-21-401 _et seq._ – DISPARATE TREATMENT - SEX-BASED DISCRIMINATION AND CONSTRUCTIVE DISCHARGE**

56. Plaintiff fully incorporates and re-alleges each of the preceding paragraphs 1 through 55 as if each is fully set forth herein.

57. Plaintiff, as a female, is a member of a statutorily protected class within the meaning of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 et seq.

58. Because Plaintiff was an experienced police officer prior to accepting her position with CPD, Plaintiff was qualified for her position within CPD.

59. As mentioned above, Plaintiff has experienced multiple instances of adverse employment action, including but not limited to, two (2) unwarranted disciplinary write-ups and a severe and pervasive environment of sexual harassment and discrimination leading to Plaintiff's constructive discharge.

60. Upon information and belief, Plaintiff has been treated differently than her male co-workers for the same or similar conduct upon which Plaintiff was disciplined and which eventually formed the basis for her constructive discharge.

61. Plaintiff has suffered damages because of Defendant's sex-based discrimination and eventual constructive discharge of Plaintiff.

**COUNT III: VIOLATION OF TITLE VII, 42 U.S.C. 2000e *et seq.* – SEXUAL HARASSMENT - HOSTILE WORK ENVIRONMENT**

62. Plaintiff fully incorporates and re-alleges each of the preceding paragraphs 1 through 61 as if each is fully set forth herein.

63. As stated above, Plaintiff, as a female, is a member of a protected class as defined by Title VII.

64. During Plaintiff's employment with Defendant, Plaintiff was subject to a continuous stream of sexually charged comments, conduct, and advances that were categorically and unambiguously rebuffed and rejected by Plaintiff.

65. Specifically, and as mentioned above, Plaintiff was forced to tolerate comments about how her clothes fit; comments regarding Plaintiff's perceived weakness due to being a member of the female sex; comments regarding Plaintiff's role in the world as a woman, inquiring whether Plaintiff and her friends were single, and unwanted sexual advances by her superiors.

66. The harassment and discriminatory conduct Plaintiff was subjected to while working for Defendant was wholly related to Plaintiff's sex and/or gender.

67. Defendant, through its agents and employees, created a hostile work environment for Plaintiff by way of a continuous stream of sexually harassing and discriminatory comments and conduct.

68. Defendant, through its agents and employees, committed, promoted, and/or failed to take action to prevent the sexual harassment that was being directed towards Plaintiff. Accordingly, Defendant is liable for the sexual harassment which Plaintiff endured during her tenure with the CPD.

69. Defendant knew or should have known about the pervasive sexual harassment of Plaintiff; however, Defendant nonetheless failed to implement prompt and appropriate corrective action.

70. Plaintiff has suffered damages because of the pervasive sexual harassment and hostile work environment that was allowed to persist at CPD by Defendant.

**COUNT IV: VIOLATION OF TITLE VII, 42 U.S.C. § 2000e *et seq.* – RETALIATION**

71. Plaintiff fully incorporates and re-alleges each of the preceding paragraphs 1 through 70 as if each is fully set forth herein.

72. Plaintiff engaged in activity that was protected by Title VII when she rejected Sgt. Parker, Lt. Jackson, and Chief Haley's repeated sexual advances.

73. Defendant, through its supervisors, knew of plaintiff's participation in Title VII protected activity when Plaintiff's supervisors' sexual advances towards Plaintiff were repeatedly rejected.

74. Following Plaintiff rejecting her supervisor's advances, Defendant, through its supervisors, issued a wholly unwarranted disciplinary write-up as described in the above ¶¶ 24 through 27. Plaintiff was then subjected to a second unwarranted disciplinary write up, as mentioned in ¶¶ 31 through 33 above, less than two (2) weeks after her first write-up.

75. Plaintiff's second write-up required Plaintiff to take part in mental health counseling as well as remedial training.

76. Upon information and belief, Defendant, through its supervising employees issued disciplinary write-ups and required mental health counseling and remedial training in retaliation for Plaintiff refusing her supervisor's sexual advances and other harassment.

77. Accordingly, Defendant, through its supervisors, took a materially adverse employment action against Plaintiff following her rejection of Chief Haley, Lt. Jackson, and Sgt. Parker's sexual advances and harassment.

78. Upon information and belief, Plaintiff's rejection of her supervisors' sexual advances is causally connected to Defendant's retaliatory conduct.

79. Plaintiff has suffered damages as a result of Defendant's retaliatory conduct.

## COUNT V: VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT, 4-21-301 *et seq.* – RETALIATION

80. Plaintiff fully incorporates and re-alleges each of the preceding paragraphs 1 through 79 as if each is fully set forth herein.

81. Plaintiff engaged in activity that is protected under both Title VII and the Tennessee Human Rights Act when she opposed and rejected the sexual harassment of her commanding officers and their sex-based differential treatment of her workplace injury.

82. Defendant, through its supervisors, knew of Plaintiff's protected activity when Plaintiff's supervisors' repeated sexual advances were rejected by Plaintiff.

83. Following Plaintiff's rejection of her supervisors' sexual advances, Plaintiff was subjected to two (2) unwarranted disciplinary write-ups and was forced to agree to mental health counseling as well as remedial training. Accordingly, Plaintiff was subject to a materially adverse action following the rejection of her supervisors' sexual advances.

84. Upon information and belief, Plaintiff's rejection of her supervisor's sexual advances is causally connected to Defendant's retaliatory conduct.

85. Plaintiff has suffered damages as a result of Defendant's retaliatory conduct.

## V.    <u>DAMAGES</u>

86. Plaintiff incorporates each of the preceding paragraphs 1 through 85 as if each is fully set forth herein.

87. As a direct and proximate cause of Defendant's conduct as described herein, Plaintiff has suffered and continues to suffer damages including, but not limited to, actual damages, foreseeable damages, consequential damages, and expectation damages as will be proven upon trial.

## <u>JURY DEMAND (12)</u>

88. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by a jury of twelve on all issues so triable.

## VI.    <u>PRAYERS FOR RELIEF</u>

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, TIFFANY SHIBHON VANSCIVER, respectfully requests the following relief:

1. That proper process issue and be served on Defendant, and that Defendant be required to answer this Verified Complaint within the time required by law;

2. That Plaintiff be allowed to amend this Verified Complaint as justice requires or as this lawsuit progresses and more evidence is procured from the discovery process;

3. That Plaintiff be awarded judgment in her favor on all counts of this Verified Complaint in such sums that shall be determined to fully and fairly compensate Plaintiff for all general,

special, incidental, and consequential damage incurred, or to be incurred, by Plaintiff, in an amount not to exceed One Hundred Thousand Dollars ($100,000.00);

4. That Plaintiff be awarded pre- and post-judgment interest;

5. That Plaintiff be awarded reasonable attorney's fees and costs, including court costs; and

6. That Plaintiff be awarded any further and general relief deemed appropriate by this Court.


Respectfully submitted,


s/ Samuel Shirley
**Samuel Shirley, Esq. BPR # 040318**
**Andrew Goldstein, Esq. BPR# 037042**
COLE LAW GROUP, P.C.
1648 Westgate Circle
Brentwood, TN 37027
Telephone: (615) 326-9059
Fax: (615) 942-5914
sshirley@colelawgrouppc.com
agoldstein@colelawgrouppc.com
*Attorneys for Plaintiff*


[VERIFICATION TO FOLLOW]

## VERIFICATION

I, TIFFANY SHIBHON VANSCIVER, being first duly sworn, make oath that I have read the foregoing Verified Complaint for Damages, know the contents thereof, and that the same is true and correct to the best of my personal knowledge, information, and belief.

TIFFANY SHIBHON VANSCIVER

SWORN TO AND SUBSCRIBED before me this ___4th___ day of ___December___, 2023.

_____
NOTARY PUBLIC

My commission expires: _10_ / _10_ / _2026_